# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| MICHAEL SEIDENSTEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>vs.<br><br>ANHEUSER-BUSCH COMPANIES, LLC,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No. 3:13-CV-00917-M<br>)<br>)<br>)<br>) |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO STAY
PENDING DECISION OF JPML; MOTION TO EXTEND DEADLINE
FOR RESPONDING TO MOTION TO DISMISS; UNOPPOSED
MOTION TO POSTPONE DEADLINE FOR FILING MOTION FOR
<u>CLASS CERTIFICATION EXPEDITING CONSIDERATION OF SAID MOTIONS</u>**

# I.
# INTRODUCTION

Defendant Anheuser-Busch Companies, LLC ("AB") fails to articulate any legitimate reasons why this Court should potentially sacrifice scarce judicial resources, and the parties should potentially spend needless time and money, during the brief two-month window of time between now and the ruling by the Joint Panel on Multidistrict Litigation ("JPML") on the pending Motion to Transfer, expected to be heard on May 30, 2013.[1]  Rather, AB partially ignores and partially attempts to minimize the issues presented in Plaintiff's moving papers—the potential benefit of preserving judicial resources during this short stay, the significant risk of inconsistent rulings, and the potential prejudice to Plaintiff of wasting substantial resources. Instead, it asks the Court to prejudge the merits of the pending Motion to Transfer, while devoting considerable briefing to the irrelevant issue of the publicity its own conduct has generated in an effort to claim prejudice by the short delay requested.

AB does not rebut that the risk of wasting the resources of the Court and the parties should be this Court's primary concern, or that courts routinely stay cases despite pending motions to remand and motions to dismiss if the issues involved in resolving the pending motion will arise in the other cases subject to the motion to transfer, or that all three grounds for dismissal asserted in the motion to dismiss in this case will require resolution in the related cases, raising a substantial risk of wasted resources by the Court and the parties if the JPML transfers the cases.  The Court should not try to predict whether the JPML will transfer the cases as part of its analysis, although AB's prediction that the JPML will not transfer has little merit.  Likewise, the Court should find unconvincing AB's claims of prejudice from negative publicity during a short delay, given that its own conduct generated the publicity, it offers no proof that publicity

---

[1] All Plaintiffs' counsel supports the transfer of these related actions to the Northern District of California, which is home to the first-filed action, and home to AB's lead counsel in this case, San Francisco attorney Marcus Topel. Contrary to AB's implication that this case was first filed and the Motion to Transfer constitutes forum shopping, that Motion seeks to transfer the case to Judge Chen, who has the first-filed case pending before him.

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO STAY PENDING DECISION OF JPML; MOTION TO EXTEND DEADLINE FOR RESPONDING TO MOTION TO DISMISS; UNOPPOSED MOTION TO POSTPONE DEADLINE FOR FILING MOTION FOR CLASS CERTIFICATION EXPEDITING CONSIDERATION OF SAID MOTIONS – PAGE 1**

will continue in the future, it offers no proof that the publicity has harmed it in any way, and it has acted inconsistently with this proposition by seeking delays in the related cases.

Alternatively, if the Court denies the stay, Plaintiff requests thirty days from entry of the order denying the stay to file his response to the motion to dismiss.  Because the point of this motion is to avoid unnecessary expenditure of time and effort, Plaintiff should not be required to start responding to the motion to dismiss until the stay issue is decided, and he should have thirty days to respond, given the complexity of the issues involved in the motion to dismiss, as described below.  AB does not have a good response to this request.  It completely ignores that Plaintiff's counsel cannot even begin work on a response until after April 11, 2013, the current due date.  At an absolute minimum, Plaintiff requests the Court to grant the seven-day extension agreed to by AB.

Finally, AB does not oppose the extension of the deadline for filing a class certification motion until a date to be set later in a scheduling order, and it agreed to expediting briefing and consideration of the Motion.  Indeed, this Reply completes the briefing.  Plaintiff requests the Court to rule as soon as possible and before April 11, 2013, when its response to the motion to dismiss is currently due.

## II.
## ARGUMENT

**A. This Court Should Stay the Action in Order to Prevent Inconsistent Rulings, Conserve Judicial Resources, and Minimize the Prejudice to the Parties**

"When evaluating a motion to stay, a primary factor the court should consider is the preservation of judicial resources." *Gonzalez v. Organon USA*, 2013 WL 664551 at *1 (N.D. Cal. Feb. 22, 2013).  Accordingly, ". . . it appears that a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and

consolidate is pending with the MDL Panel because of the judicial resources that are conserved." *Rivers v. Walt Disney Co.,* 980 F. Supp. 1358, 1362 (C.D. Cal. 1997).

In its Opposition [Dkt. 26], AB does not deny that the potential to save judicial resources by staying an action pending a JPML decision on a motion to transfer generally or usually justifies a stay. Rather, it argues that regardless of whether the case is transferred, denying the motion to dismiss would not waste judicial resources because the motion allegedly involves issues of Texas law and because the JPML is allegedly unlikely to grant the motion to transfer. Opp. at 8-18. The first argument fails because two of AB's three grounds for dismissal clearly involve federal, not Texas, law issues common to all the cases, and the third ground, when carefully considered, actually involves a question common to all the cases of whether federal alcohol labeling laws somehow modify state statutory warranty and consumer protection remedies. The second argument fails because no authority or logic supports a district court trying to predict how the JPML will rule on a motion to transfer in exercising its discretion as to whether to stay an action pending the JPML's ruling on that motion to transfer.

    1.    <u>That the Related Actions Involve Common Issues of Both Federal and State Law, Presenting the Risk of Inconsistent Rulings, Strongly Supports a Stay</u>

AB's allegation that Plaintiff's claims are "dependent solely on state law" (Opp. at 9) is simply irrelevant, not to mention incorrect. The issue is whether the bases for dismissal urged by AB in this case will be urged in the other cases, making it desirable for the Court to wait to see if transfer is ordered, rather than this Court potentially wasting its time making a ruling that the transferee court will need to reconsider and, possibly, overrule.

Initially, the issue of whether the Plaintiffs in each case have standing under Article 3 of the U.S. Constitution to bring claims on behalf of their proposed classes related to AB products that they personally did not purchase undisputedly constitutes a question of federal law arising in

all of the cases. Likewise, whether the complaints meet the federal *Iqbal* pleading standard constitutes a common issue of federal procedure that should be ruled upon only once. AB tries to avoid this conclusion by arguing that it directs its *Iqbal* insufficiency claims at the individual Plaintiffs' allegations relating to their purchases of AB products, allegedly making them unique in each case (Opp. at 10), but examination of the six complaints attached as exhibits to the Motion shows that they all plead Plaintiffs' purchases in almost exactly the same level of specificity, making the application of the *Iqbal* standard to the six complaints a common question.

AB argues that the third ground for dismissal – that TABC beer labeling regulations allegedly prevent liability – constitutes a unique issue under Texas law that will not require decision in the other cases. Careful examination of that claim reveals its falsity, however. All six of the complaints allege breach of the implied warranty of merchantability by the failure of AB's beers to conform to the promises or affirmations of fact about alcohol content on their labels pursuant to identical statutory provisions. *See* the Complaints attached as exhibits to the Motion; CAL. COM. CODE § 2314(2)(f); COLO REV. STAT. ANN. § 4-2-314(2)(f); N.J. STAT. ANN. § 12A:2-314(2)(f); OH. REV. CODE ANN. § 1302.27(B)(B); 13 PA. CONS. STAT. ANN. § 2314(b)(6); TEX. BUS. & COM. CODE ANN. § 2.314(b)(6).[2] These violations of the Uniform Commercial Code constitute the bases for the violations of the Magnusson-Moss Warranty Act in all of the Complaints. Further, Plaintiffs base all of their claims for violation of state consumer protection statutes upon the same misrepresentations on AB's beer labels.

AB erroneously argues that, because federal labeling regulations (and, also, perhaps uniquely, Texas labeling regulations) allow the alcohol content to vary up to 0.3% from what is stated on the label, any state law based claims (including the MMWA, which incorporates state breach of warranty law) must be interpreted in light of the regulations such that variations in

---

[2] True and correct copies of those statutes are attached hereto as Exhibits A through F, respectively, for the Court's convenience.

alcohol content from the labels of less than 0.3% allegedly do not constitute an actionable statutory violation. Memorandum in Support of Motion to Dismiss [Dkt. 14] at 13-16. Because this 0.3% tolerance is found in the federal regulations, Defendant will be arguing it in every one of the cases, regardless of state law, and the interplay between federal labeling regulations and state statutory remedies will be the same in each case, calling for one uniform ruling. Because Texas has a regulation that mirrors the federal regulation with respect to the 0.3% tolerance, AB misleadingly tries to characterize their argument as uniquely resting in Texas law. *Compare* 27 C.F.R. § 7.71(c) and 16 TEX. ADMIN. CODE § 45.79.

Plaintiffs' responses in all of the cases will be essentially identical, referencing the Federal Alcohol Administration Act ("FAAA"), 27 U.S.C. §§ 201, *et seq.,* 27 C.F.R. Part 7, *et seq.*, opinions and directives by the Alcohol and Tobacco Tax and Trade Bureau ("TTB"), state regulations, and National Institute for Standards and Technology ("NIST"). Specifically, all Plaintiffs will argue that the TTB has clarified the proper intent and permitted use of tolerances: ". . . to provide for normal production and analytical variables while continuing to ensure that the labeling does not mislead the consumer." TTB Procedure 2004-1.[3] Similarly, the TTB provided that "[t]his tolerance permits normal variations in the production of beer, ale, and so forth brought about by differences in raw materials and brewing practices." 58 FR 21228-01. There is nothing "normal" about what AB has done. Likewise, the NIST, which is directed by Congress to develop national standards of measurement, aims ". . . to eliminate from use, weights and measures and weighing and measuring devices . . . ***that facilitate the perpetration of fraud***, without prejudice to apparatus that conforms as closely as practicable to the official standards." NIST Handbook 44, p. 1 (emphasis added).

---

[3] *See also* TTB Ruling 80-3 (determining that the intent of tolerance ranges with respect to labeled statements of caloric, carbohydrate, protein, and fat contents for malt beverages, "is to provide for normal production and analytical variables while continuing to ensure that the labeling is not misleading to the consumer.").

In other words, the 0.3% tolerance found in the federal regulations (and any mirror state regulations) is strictly to account for natural variations uncontrollable by the brewer.  It is not to allow a brewer like AB (as alleged by Plaintiffs) with the capability of almost exactly meeting the alcohol content stated on the label (within .01%) to deliberately dilute the beer from the alcohol content stated on the label to 0.3% below the stated content.  Thus, the supposedly Texas-only issue urged by AB really constitutes an issue common to all of the cases that should be resolved by only the transferee court, if transfer is granted, to avoid a potential waste of scarce judicial and party resources and to make sure that all rulings are consistent.

    2.    <u>The Complexity of Common Legal and Factual Issues Favors Staying this Action Pending the JPML's Decision</u>

As to the complexity of the case, AB seems to take two inconsistent positions. On the one hand, it argues, "Plaintiff's allegations are not complex . . .." Opp. ¶ 4. On the other, AB acknowledges requesting extensions to respond to other complaints "in order to allow it to assess the complex and unique individual state law issues . . .." *Id.* ¶ 11. AB likewise claimed that, ". . . ***this is not a simple class action*** challenging one product."  *Id.* ¶ 27 (emphasis added).  Further, AB argues for the alleged factual simplicity of the litigation by assuming there is no dispute as to whether "the beer at all times was within the 0.3% regulatory tolerance . . .." *Id.* ¶ 24.

Initially, as set forth above, this case definitely involves complex legal issues involving the interplay between federal beer labeling regulations (and, at least in some cases, state labeling regulations) and state and federal statutes providing remedies for breach of the implied warranty of merchantability and unfair and deceptive trade practices.  Furthermore, even if it were true that all of the beer sold by AB contained only 0.3% less alcohol than that stated on the label (which Plaintiffs have the right to investigate through discovery), Plaintiffs' defense to AB's argument will require complex factual discovery and resolution.  Plaintiffs plead that AB uses

Anton Paar meters, "sophisticated process control technology," that allow it to produce beer within 0.01% of the alcohol content stated on the label and that it uses this technology to deliberately, at the end of the process, dilute the beer down by 0.3%. *See* Complaint ¶¶ 8, 12 & 13.

Thus, discovery will focus on AB's precision technology, including issues of maintenance and calibration, corporate practices and specifications, as well as AB's internal measurements of alcohol content. This will invariably require extensive expert analysis. Ultimately, the trier of fact will have to determine if AB could have produced the beer with variations of only 0.01% from the alcohol content stated on the label but deliberately diluted the beer down to 0.3% less than the alcohol content stated on the label. This is the type of factual complexity that has been held to warrant transfer and consolidation. *See, e.g., In re Bridgestone/Firestone, Inc.*, 2000 WL 33416573, *2 (J.P.M.L. 2000) (centralizing disparate actions alleging harm caused by defective Firestone tires because "[r]elevant discovery, including expert testimony, will overlap substantially in each action"); *In re Plavix Marketing, Sales Practices and Products Liability Litigation (No. II),* 2013 WL 565971 (U.S.Jud.Pan.Mult.Lit.), 2. ("Issues concerning the development, manufacture, regulatory approval, labeling, and marketing of the drug are thus common to all actions.").

   3. <u>The Court Should Not Attempt to Determine Whether the JPML Is Likely to Grant Transfer in Deciding the Motion to Stay.</u>

Initially, AB cites no authority for the proposition that the Court should engage in an analysis of whether the JPML is likely to grant the motion to transfer in deciding whether to stay an action pending the JPML's decision on a motion to transfer. Furthermore, logic dictates that the Court not do so. Briefing before the JPML on whether transfer should occur is often lengthy

and complex. If the Court were to review, research and decide the likelihood of success before the JPML based upon such lengthy and complex briefing and then to deny a stay and decide the motion to dismiss based upon the supposed unlikelihood of a transfer and the JPML disagrees and transfers the case, the Court will have not only wasted scarce judicial resources in deciding the motion to dismiss, which will now be subject to reexamination, but it will have also wasted its time in deciding, wrongly, that the JPML was not going to transfer the actions. It simply makes no sense for the Court to try do the JPML's work as part of its exercise of its discretion to stay of an action before it when a brief delay will allow the JPML itself to decide the issue.

Plaintiff does note, however, that the arguments set forth above about the complex legal and factual issues and the need for consistent rulings upon them involved in these cases does strongly support transfer of the actions by the JPML to one court. Further, this case involves overlapping classes, because the Plaintiffs in the California action seek to certify a 48-state class for AB's alleged violation of the Missouri Merchandising Practices Act, which (contrary to Defendant's assertion) applies extraterritorially.[4] Notably, the JPML has ". . . consistently held that transfer of actions under Section 1407 is appropriate, *if not necessary*, where the possibility of inconsistent class determinations exists." *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (emphasis added).

---

[4] Defendant's citations on p. 18, footnote 10, do not stand for the propositions AB claims. Federal courts, including at least one court in this district, routinely apply the Missouri Manufacturing Practices Action. See e.g. *Borchardt v. Mako Marine Int'l, Inc.*, 2011 WL 2084177 at *3 (S.D. Fla. May 24, 2011) ("Missouri courts recognize that this language does not necessarily restrict application of the MMPA to consumer victims domiciled within the State of Missouri, or to business transacted entirely within Missouri's territorial borders. . . ."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 787 F. Supp. 2d 1036, 1047 (N.D. Cal. 2011); *In re Actimmune Mktg. Litig.*, 2009 WL 3740648 (N.D. Cal. Nov. 6, 2009) aff'd, 464 F. App'x 651 (9th Cir. 2011); *Griggs v. Credit Solutions of Am., Inc.*, 2010 WL 2976209 (N.D. Tex. July 28, 2010) (recognizing the applicability of the Missouri law to an MMPA action in the Northern District of Texas).

## B. A Brief Stay Will Not Prejudice AB

In a transparent effort to manufacture some sort of exigency—one that cannot wait just over a month for the JPML to issue a ruling – AB laments the publicity its conduct has generated and cites irrelevant media interviews by unaffiliated counsel.[5] Of course, AB failed to mention that it took out full-page advertisements in the Sunday edition of ten major metropolitan newspapers, including the Houston Chronicle, mocking these complaints, while not denying the factual allegations.[6] AB's publicity stunt naturally generated the media attention it sought, starting an entirely new round of publicity. Remarkably, while now feigning a desire to swiftly clear its "good name" in court, AB requested multiple extensions of time in which to respond to the various complaints, and it agreed to modify the briefing schedules for the motions to dismiss in all of the other pending actions.[7] Despite the billions of dollars at stake, AB even sought multiple delays and extensions in the federal antitrust action brought against it by the federal government.[8]

AB also fails to mention that it was solely responsible for generating a wave of negative publicity when it chose to sue one of its former employees for blowing the whistle on the same misconduct alleged in this complaint, and for his alleged participation in the California

---

[5] Josh Boxer, an attorney at The Mills Law Firm, is not counsel of record in this case, nor is he counsel in the Ohio, New Jersey or Pennsylvania actions. However, it is not disputed that the attorneys involved with most (though not all) of the filings against AB challenging its alcohol-shaving practices were in contact with each other prior to filing.
[6] See Request for Judicial Notice ("RJN") filed simultaneously with this Reply and Ex. A thereto.
[7] In fact, AB just stipulated to an extension of the briefing and hearing schedule for a motion to dismiss in the New Jersey case such that any motion to dismiss would be heard on June 3, 2013, *three days after the JPML hearing*. See Case No. 1:13-cv-01122-NLH-AMD, Dkt. No. 6.
[8] See *United States of America v. Anheuser-Busch INBEV SA/NV et al.*, Case No. 1:13-cv-00127-RWR, Dkt. Nos. 21, 23.

litigation.[9]  AB is now facing an anti-SLAPP motion in that case, generating headlines that are not dependent on the schedule in this case.[10]

Finally, AB offers no proof that any past publicity has actually harmed it in any way, that any publicity at all will occur during the stay or that any such publicity will actually harm it. Accordingly, it has offered no proof of prejudice from a delay.

### III.
### CONCLUSION

WHEREFORE, Plaintiff, Michael Seidenstein, individually, and on behalf of all other similarly situated, requests the Court to grant him the relief set forth above and to grant him all such other and further relief, legal or equitable, to which he may show himself justly entitled.

Dated:  April 5, 2013                                         Respectfully submitted,

*/s/ Roger L. Mandel*
ROGER L. MANDEL
State Bar No. 12891750
Bruce E. Bagelman
State Bar No. 01509700
LACKEY HERSHMAN, L.L.P.
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219
Phone: (214) 560-2201
Fax:    (214) 560-2203
rlm@lhlaw.net

---

[9] RJN, Ex. B.
[10] RJN, Ex. C.

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO STAY PENDING DECISION OF JPML; MOTION TO EXTEND DEADLINE FOR RESPONDING TO MOTION TO DISMISS; UNOPPOSED MOTION TO POSTPONE DEADLINE FOR FILING MOTION FOR CLASS CERTIFICATION EXPEDITING CONSIDERATION OF SAID MOTIONS – PAGE 10**

**Certificate of Service**

On the 5th day of April, 2013, the foregoing Reply in Support of Plaintiff's Motion to Stay Pending Decision of JPML; Motion to Extend Deadline for Responding to Motion to Dismiss; Unopposed Motion to Postpone Deadline for Filing Motion for Class Certification Expediting Consideration of Said Motions was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

                                               */s/ Roger L. Mandel*
                                               Roger L. Mandel