# Exhibit E

Purdon's Pennsylvania Statutes and Consolidated Statutes
 Title 13 Pa.C.S.A. Commercial Code (Refs & Annos)
  Division 2. Sales (Refs & Annos)
   Chapter 23. General Obligation and Construction of Contract

13 Pa.C.S.A. § 2314

§ 2314. Implied warranty; merchantability; usage of trade

Currentness

**(a) Sale by merchant.**--Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

**(b) Merchantability standards for goods.**--Goods to be merchantable must be at least such as:

(1) pass without objection in the trade under the contract description;

(2) in the case of fungible goods, are of fair average quality within the description;

(3) are fit for the ordinary purposes for which such goods are used;

(4) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved;

(5) are adequately contained, packaged, and labeled as the agreement may require; and

(6) conform to the promises or affirmations of fact made on the container or label if any.

**(c) Course of dealing or usage of trade.**--Unless excluded or modified (section 2316) other implied warranties may arise from course of dealing or usage of trade.

**Credits**
1979, Nov. 1, P.L. 255, No. 86, § 1, effective Jan. 1, 1980.

**Editors' Notes**

**UNIFORM COMMERCIAL CODE COMMENT**

**Prior Uniform Statutory Provision:** Section 15(2), Uniform Sales Act.

§ 2314. Implied warranty; merchantability; usage of trade, PA ST 13 Pa.C.S.A. § 2314

*For text of prior provision, see Appendix in end volume of Uniform Laws Annotated, U.C.C., Master Edition.*

**Changes:** Completely rewritten.

**Purposes of Changes:** This section, drawn in view of the steadily developing case law on the subject, is intended to make it clear that:

1. The seller's obligation applies to present sales as well as to contracts to sell subject to the effects of any examination of specific goods. (Subsection (2) of Section 2-316). Also, the warranty of merchantability applies to sales for use as well as to sales for resale.

2. The question when the warranty is imposed turns basically on the meaning of the terms of the agreement as recognized in the trade. Goods delivered under an agreement made by a merchant in a given line of trade must be of a quality comparable to that generally acceptable in that line of trade under the description or other designation of the goods used in the agreement. The responsibility imposed rests on any merchant-seller, and the absence of the words "grower or manufacturer or not" which appeared in Section 15(2) of the Uniform Sales Act does not restrict the applicability of this section.

3. A specific designation of goods by the buyer does not exclude the seller's obligation that they be fit for the general purposes appropriate to such goods. A contract for the sale of second-hand goods, however, involves only such obligation as is appropriate to such goods for that is their contract description. A person making an isolated sale of goods is not a "merchant" within the meaning of the full scope of this section and, thus, no warranty of merchantability would apply. His knowledge of any defects not apparent on inspection would, however, without need for express agreement and in keeping with the underlying reason of the present section and the provisions on good faith, impose an obligation that known material but hidden defects be fully disclosed.

4. Although a seller may not be a "merchant" as to the goods in question, if he states generally that they are "guaranteed" the provisions of this section may furnish a guide to the content of the resulting express warranty. This has particular significance in the case of second-hand sales, and has further significance in limiting the effect of fine-print disclaimer clauses where their effect would be inconsistent with large-print assertions of "guarantee".

5. The second sentence of subsection (1) covers the warranty with respect to food and drink. Serving food or drink for value is a sale, whether to be consumed on the premises or elsewhere. Cases to the contrary are rejected. The principal warranty is that stated in subsections (1) and (2)(c) of this section.

6. Subsection (2) does not purport to exhaust the meaning of "merchantable" nor to negate any of its attributes not specifically mentioned in the text of the statute, but arising by usage of trade or through case law. The language used is "must be at least such as ...," and the intention is to leave open other possible attributes of merchantability.

7. Paragraphs (a) and (b) of subsection (2) are to be read together. Both refer, as indicated above, to the standards of that line of the trade which fits the transaction and the seller's business. "Fair average" is a term directly appropriate to agricultural bulk products and means goods centering around the middle belt of quality, not the least or the worst that can be understood in the particular trade by the designation, but such as can pass "without objection." Of course a fair percentage of the least is permissible but the goods are not "fair average" if they are all of the least or worst quality possible under the description. In cases of doubt as to what quality is intended, the price at which a merchant closes a contract is an excellent index of the nature and scope of his obligation under the present section.

8. Fitness for the ordinary purposes for which goods of the type are used is a fundamental concept of the present section and is covered in paragraph (c). As stated above, merchantability is also a part of the obligation owing to the purchaser for use. Correspondingly, protection, under this aspect of the warranty, of the person buying for resale to the ultimate consumer is


§ 2314. Implied warranty; merchantability; usage of trade, PA ST 13 Pa.C.S.A. § 2314

equally necessary, and merchantable goods must therefore be "honestly" resalable in the normal course of business because they are what they purport to be.

9. Paragraph (d) on evenness of kind, quality and quantity follows case law. But precautionary language has been added as a reminder of the frequent usages of trade which permit substantial variations both with and without an allowance or an obligation to replace the varying units.

10. Paragraph (e) applies only where the nature of the goods and of the transaction require a certain type of container, package or label. Paragraph (f) applies, on the other hand, wherever there is a label or container on which representations are made, even though the original contract, either by express terms or usage of trade, may not have required either the labelling or the representation. This follows from the general obligation of good faith which requires that a buyer should not be placed in the position of reselling or using goods delivered under false representations appearing on the package or container. No problem of extra consideration arises in this connection since, under this Article, an obligation is imposed by the original contract not to deliver mislabeled articles, and the obligation is imposed where mercantile good faith so requires and without reference to the doctrine of consideration.

11. Exclusion or modification of the warranty of merchantability, or of any part of it, is dealt with in the section to which the text of the present section makes explicit precautionary references. That section must be read with particular reference to its subsection (4) on limitation of remedies. The warranty of merchantability, wherever it is normal, is so commonly taken for granted that its exclusion from the contract is a matter threatening surprise and therefore requiring special precaution.

12. Subsection (3) is to make explicit that usage of trade and course of dealing can create warranties and that they are implied rather than express warranties and thus subject to exclusion or modification under Section 2-316. A typical instance would be the obligation to provide pedigree papers to evidence conformity of the animal to the contract in the case of a pedigreed dog or blooded bull.

13. In an action based on breach of warranty, it is of course necessary to show not only the existence of the warranty but the fact that the warranty was broken and that the breach of the warranty was the proximate cause of the loss sustained. In such an action an affirmative showing by the seller that the loss resulted from some action or event following his own delivery of the goods can operate as a defense. Equally, evidence indicating that the seller exercised care in the manufacture, processing or selection of the goods is relevant to the issue of whether the warranty was in fact broken. Action by the buyer following an examination of the goods which ought to have indicated the defect complained of can be shown as matter bearing on whether the breach itself was the cause of the injury.

**Cross References:**

Point 1: Section 2-316.

Point 3: Sections 1-203 and 2-104.

Point 5: Section 2-315.

Point 11: Section 2-316.

Point 12: Sections 1-201, 1-205 and 2-316.

**Definitional Cross References:**

"Agreement". Section 1-201.

"Contract". Section 1-201.

"Contract for sale". Section 2-106.

"Goods". Section 2-105.

"Merchant". Section 2-104.

"Seller". Section 2-103.

### BAR ASSOCIATION COMMENT--1953

(1) Scope. (a) Sales by Merchant. Special responsibility in sales by merchants carries forward the warranty of merchantability of § 15(2) of the Uniform Sales Act, 69 P.S. § 124 (repealed), for goods bought by description from "a seller *who deals* in goods of the description." The Code, however, broadens the scope of the warranty by omitting the qualification that the sale be "by description." In Bonenberger v. Pittsburgh Mercantile Co., 345 Pa. 554, 28 A. (2d) 913 (1943) the Court referred to this requirement as "indefinite," and avoided construing the provision.

For decisions applying the warranty of merchantable quality see: Madden v. Great A. & P. Tea Co., 106 Pa.Super.Ct. 474, 162 Atl. 687 (1932); Young v. Great A. & P. Tea Co., 15 F.Supp. 1018 (D.C.Pa.1936) (warranty applies to sales in sealed container). See: Henderson v. National Drug Co., 343 Pa. 601, 23 A.2d 743 (1942) (liver extract administered by physician).

(b) Serving of Food or Drink. The Uniform Sales Act did not specify whether serving of food or drink would be a "sale" within its scope. In accord with the Code see: Campbell v. G. C. Murphy Co., 122 Pa.Super.Ct. 342, 186 Atl. 269 (1934) (sandwich served in restaurant). This is also the majority rule. See Anno., 7 A.L.R.2d 1027 (1949).

(2) Definition of Merchantable Quality. The Uniform Sales Act did not define the term "merchantable quality." Neither have the Pa. cases clearly defined the term. The tests of subsection 2(b) and (c) in terms of "fair average quality" and "ordinary purposes" are consistent with cases denying liability where injury is the result of buyer's peculiarity. *Cf.* Jones v. Boggs & Buhl, 355 Pa. 242, 49 A.2d 379 (1946) (allergy). But *cf.* Bonenberger v. Pittsburgh Mercantile Co., 345 Pa. 559, 28 A.2d 913 (1943).

Notes of Decisions (331)

13 Pa.C.S.A. § 2314, PA ST 13 Pa.C.S.A. § 2314
Current through end of the 2012 Regular Session

End of Document                                    © 2013 Thomson Reuters. No claim to original U.S. Government Works.